IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | CHAPTER 11 |
| EARTH PRIDE ORGANICS, LLC | BANKRUPTCY NO. 17-13816(ELF) |
| Debtor | |
| In re: | CHAPTER 11 |
| LANCASTER FINE FOODS, INC. | BANKRUPTCY NO. 17-13819(ELF) |
| Debtor | |

**DECLARATION OF MICHAEL THOMPSON IN SUPPORT OF FIRST DAY MOTIONS**

I, Michael Thompson, hereby declare under penalty of perjury (the "Declaration"):

1. I am the President of Lancaster Fine Foods, Inc. and, between myself and a family trust, own seventy percent (70%) owner of Earth Pride Organics, LLC, the parent company of Lancaster Fine Foods, Inc. (Hereinafter collectively referred to as "the Debtors"). In these capacities, I am generally familiar with the Debtors' day to day operations, business, financial affairs, books and records.

2. On May 31, 2017 (the "Petition Date"), the Debtors filed voluntary petitions with the United States Bankruptcy Court for the Eastern District of Pennsylvania under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"). Since the Petition Date, the Debtors have been operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. To enable the Debtors to minimize the adverse effects of the commencement of these Chapter 11 cases on their businesses, the Debtors have requested various types of relief in their "first day" motions and applications (each, a "First Day Motion"). The First Day Motions

seek relief intended to allow the Debtors to effectively transition into Chapter 11 and minimize disruption of the Debtors' business operations, thereby preserving and maximizing the value of the Debtors' estates.

4. I am familiar with the contents of each First Day Motion (including the exhibits and schedules thereto) and I believe that the relief sought in each First Day Motion: (a) is necessary to enable the Debtors to operate in chapter 11 with minimal disruption or loss of productivity and value; (b) constitutes a critical element to achieving a successful reorganization of the Debtors; and (c) best serves the Debtors' estates and creditors' interests. Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, and information supplied to me by other members of the Debtors' management and the Debtors' advisors. I am authorized to submit this Declaration on behalf of the Debtors, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

5. Part I of this Declaration describes the Debtors' businesses, their capital and corporate structures and the circumstances surrounding the commencement of these Chapter 11 cases. Part II sets forth the relevant facts in support of each of the First Day Motions.[1]

## BACKGROUND

### A. Commencement of Chapter 11 Cases

6. On the Petition Date, the Debtors filed voluntary petitions with the United States Bankruptcy Court for the Eastern District of Pennsylvania under Chapter 11 of Title 11 of the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the relevant First Day Motion.

Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**B.    The History of the Debtors and Their Businesses**

7.    Lancaster Fine Foods, Inc. is a specialty food manufacturing facility that manufacturers specialty jams, barbeque sauces, functional beverages, marinades, dips, mustards, hot sauces, condiments and salad dressings.

8.    Lancaster packages these products in an array of packaging from 1.5oz cups to 12oz jars to plastic gallon jugs.

9.    Finished products are sold all over the world in a wide range of retailers.

10.    The Debtor's facility lies within the Lancaster Metropolitan Area of South Central Pennsylvania from which it enjoys logistical advantages due to its location.

11.    Lancaster Fine Foods, Inc. has been in business since 2008 when several partners purchased an existing business that had a 20 year history. From 2008 to 2016, the business of Lancaster Fine Foods has grown five-fold. The preliminary estimates are that the business will double its 2016 sales of $10.0 million in the year 2017. This will represent opportunity for more than 70 full time employees (up from 55 in 2016).

**E.    The Debtors' Capital Structure**

12.    As of the Petition Date, the Lancaster Debtor's secured debt consists of the following obligations owed to the Midtown Capital Partners, LLC, Change Capital Partners, LLC, and Loeb Term Solutions ("Lenders").

**I.    Pre-Petition Financing Provided by Change Capital Partners and Midtown Capital Partners**

13.    As of the Petition Date, the Debtors' secured debt consists of certain obligations owed to Change Capital Partners Fund I, LLC (the "Lender").

14. On or about October 24, 2016, the Debtors entered into a Merchant Receivables Purchase and Security Agreement with the Lender (the "Change Capital Merchant Agreement") in the original principal amount of $1,000,000.

15. On or about December 2, 2016, the Debtors entered into a Merchant Receivables Purchase and Security Agreement with Midtown Capital Partners LLC (the "Midtown Merchant Agreement", and together with the Change Capital Merchant Agreement, the "Merchant Agreements") in the original principal amount of $400,000.00 which agreement was subsequently assigned by Midtown Capital Partners LLC to the Lender.

16. Pursuant to the terms of the Merchant Agreements, in order to secure the Debtors' obligations, the Debtors granted to the Lender, among other things, a security interest in any and all of the personal property of the Debtors of any nature whatsoever.

17. On or about May 25, 2017, Midtown Capital Partners, LLC, entered into another receivable purchase and security agreement with the Debtors in the amount of $200,000.00.

18. As of the Petition Date, the principal balance due under the Merchant Agreements is approximately $1,300,000.00.

**II.    Pre-Petition Financing Provided by Loeb Term Solutions**

19. On or about, September 9, 2016, Loeb Term Solutions, LLC, ("Loeb") made available to the Debtors a loan in the original principal amount of $974,000.00.

20. Loeb alleges that the Loan is secured by certain assets of the Debtor, Lancaster, as evidenced by the underlying loan documents (the "Loeb Loan Documents").

21. Loeb alleges that it perfected its security interest by the filing of its UCC-1 financing statement with the appropriate governmental agencies subject to the terms of an alleged Intercreditor Agreement with Azadian Group (the Intercreditor Agreement").

22. As of the Petition Date, the principal balance due under the Loeb Loan is $395,497. The proceeds of Loeb Loan were used to purchase Equipment.

23. As of the Petition Date, the Debtors have certain equipment and/or vehicles financed/leased by 3rd party lenders and approximately $5,000,000 of unsecured claims which includes a disputed, unliquidated claim asserted by Dalmatia in the amount of $2.16 million.

F. **The Bankruptcy Case and the Events Leading to the Instant Filings**

24. Prior to the filing of the case, The Debtors were involved in Litigation with Dalmatia Import Group, Inc. regarding trademark infringement and other related causes of action. This culminated in a judgement being entered on May 3, 2017 in the amount of approximately $2.16 million which is presently subject to post-trial motions which are stayed pursuant to 11 U.S.C 362 of the Bankruptcy Code.

### First Day Motions

A. **Motion of the Debtors for an Order Directing Joint Administration of Their Related Chapter 11 Cases**

25. The Debtors in these chapter 11 cases are affiliated entities.

26. I am the President of Lancaster Fine Foods, Inc and, between myself and a family trust, are a seventy percent (70%) owner of Earth Pride Organics, LLC, the parent company of Lancaster Fine Foods, Inc.

27. The Debtors request that, in light of the fact that each of these Debtors have filed petitions before this Court, the Court can and should jointly administer these chapter 11 cases. I believe that jointly administering these chapter 11 cases: (a) will ease the administrative burden on the Court and the parties; (b) will protect creditors of different estates; and (c) will simplify the United States Trustee's supervision of the administrative

aspects of the chapter 11 cases. Accordingly, I believe that joint administration is in the best interests of the Debtors' estates.

      **B.**    **Motion of the Debtors for an Order Pursuant to 11 U.S.C. 363(c) and Fed.R.Bankr.P. 4001, Authorizing Debtors to Use Cash Collateral and Provide Adequate Protection**

28.     The Debtors require the ability to use cash and the proceeds of existing accounts receivable to maintain the operation of its business and preserve its value as a going concern. These essential items, however, constitute part of Lenders' collateral and, therefore, may not be used in support of the Debtors' ongoing business activities absent compliance with Section 363 of the Bankruptcy Code or the consent of Lenders.

29.     In accordance with Section 363 of the Bankruptcy Code, the Debtors request that the Court authorize the Debtor's use of Cash Collateral for an interim period, pending a final hearing on the Debtor's use of Cash Collateral.

30.     The Debtor requests authority to use cash collateral in the amount to be set forth on a budget which is being negotiated with Lenders and will be submitted to the Court on or before the hearing date for the cash collateral Motion. The use of cash collateral is necessary in order for the Debtor to be able to operate and pay its post-petition obligations as they come due.

      **C.**    **Motion of the Debtors for an Order (A) Authorizing the Debtors to Pay Certain Pre-Petition Wages, Salaries, and Other Compensation and (B) Directing Banks and Other Financial Institutions to Honor all Related Checks and Electronic Payment Requests**

31.     As of the Petition Date, the Debtors employed approximately sixty-six (66) employees (collectively, the "Employees"). the Lancaster Debtor employed approximately sixty (60) employees while the E.P.O. Debtor employed six (6) employees (collectively, the "Employees").

32.     The Employees perform a variety of critical functions including accounting, human resources, professional services and other tasks. The Employees' skills and their

knowledge and understanding of the Debtor's operations, customer relations, and infrastructure are essential to the Debtor's business.

33. Just as the Debtors depends on its Employees to operate, the Employees depend on the Debtor. The vast majority of the Debtor's Employees rely exclusively on their compensation and benefits to continue to pay their daily living expenses and these Employees will be exposed to significant financial difficulties if the Debtors are not permitted to pay them their full unpaid compensation in the ordinary course of business.

34. To minimize the personal hardship that the Employees would suffer if pre-petition Employee-related obligations are not paid when due or as expected, and to maintain morale and stability in the Debtor's workforce during this critical time, the Debtor, seeks authority to pay and honor, in its sole discretion, certain pre-petition claims for, among other items: wages, salaries, federal and state withholding taxes and other amounts withheld in the ordinary course of business (collectively, and as more fully described below, the "<u>Employee Obligations</u>") and to pay all costs incident to the foregoing.

    (i)    Employee Obligations

        a.    <u>Unpaid Compensation</u>

35. In the ordinary course of business, the Debtors incurs payroll obligations to the Employees. Such obligations generally comprise wages and salaries. The Debtors generally pays its Employees every Friday one week in arrears. The payroll period runs from Saturday to Friday.

36. The next scheduled pay date is **Friday, June 9, 2017**. On average, the Debtors have gross wages and salary expenses of approximately $114,000.00 each payroll period. The Debtors use Heartland Payroll Service to process its payroll.

7

37. As of the Petition Date, the Employees may not have been paid all of their pre-petition wages and compensation. (the "Unpaid Compensation"). Additionally, some Employees may be entitled to compensation because some checks issued to Employees prior to the Petition Date may not have been presented for payment or may not have cleared the banking system and, accordingly, have not been honored and paid as of the Petition Date (the "Uncashed Checks").

38. To the extent that there may be uncashed payroll checks as of the Petition Date, the Debtors seeks authority, but not direction, to pay the Unpaid Compensation, along with any costs associated therewith.

39. To the extent any other Unpaid Compensation exceeds the statutory priority cap imposed by sections 507(a)(4) and (5) of the Bankruptcy Code, such payments will be limited to $12,850.00. The Debtors are not hereby seeking authority to pay any of the Employees on account of pre-petition accrued wage or benefit obligations in excess of the $12,850.00 priority cap.

    b.    <u>Deductions and Withholdings</u>

40. During each applicable pay period, the Debtors routinely deducts certain amounts from Employees' paychecks, including, without limitation, garnishments, child support, and similar deductions (collectively, the "<u>Deductions</u>"). The Debtors forwards the amount of the Deductions to the appropriate third-party recipients. Due to the commencement of the Chapter 11 case, however, certain Deductions that were deducted from Employees' earnings may not have been forwarded to the appropriate third-party recipients prior to the Petition Date. Accordingly, the Debtors requests authority, but not direction, to forward any unpaid Deductions to the appropriate third party recipients and to continue to forward

these pre-petition Deductions to the applicable third party recipients on a post-petition basis, in the ordinary course of business as routinely done prior to the Petition Date.

41. Further, the Debtors are required by law to withhold from an Employee's wages amounts related to federal, state and local income taxes, Social Security and Medicare taxes for remittance to the appropriate federal, state, or local taxing authority (collectively, the "Withheld Amounts"). The Debtors must then pay social security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (collectively, the "Employer Payroll Taxes").

42. Prior to the Petition Date, the Debtors withheld the appropriate amounts from Employees' earnings for the Withheld Amounts and the Employer Payroll Taxes (collectively, the "Payroll Taxes"), but such funds may not yet have been forwarded to the appropriate taxing authorities. The Debtors estimate that the accrued Payroll Taxes total approximately $12,000.00. The Debtors requests authority, but not direction, to forward any outstanding Payroll Taxes to the appropriate third parties, and to continue to honor and process the pre-petition payments for Payroll Taxes on a post-petition basis, in the ordinary course of business, as routinely done prior to the Petition Date.

Dated: June 7, 2017    By: _____
MICHAEL THOMPSON