### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:** | : |
| | : |
| | : CHAPTER 11 |
| | : |
| **EARTH PRIDE ORGANICS, LLC** | : |
| **LANCASTER FINE FOODS, INC.** | : CASE NO. 17-13816 (ELF) |
| | : |
| **Debtors** | : JOINTLY ADMINISTERED |
| | : |

### ORDER CONFIRMING FOURTH AMENDED JOINT
### PLAN OF REORGANIZATION DATED JUNE 6, 2018

**AND NOW**, this _____ day of September, 2018, a confirmation hearing having been held on September 6, 2018 (the "Confirmation Hearing") in the above-captioned case on the Fourth Amended Joint Plan of Reorganization proposed by EARTH PRIDE ORGANICS, LLC ("EPO"), LANCASTER FINE FOODS, INC. ("LFF," collectively with EPO, the "Debtors"), and the OFFICIAL COMMITTEE OF UNSECURED CREDITORS (the "Committee," or together with the Debtors, the "Plan Proponents") dated June 6, 2018 (the "Plan")[1] and

**THE COURT** having considered:

(1) The Fourth Amended Joint Disclosure Statement[2] dated June 6, 2018 [D.E. No. 429] (the "Disclosure Statement") submitted by the Debtors and the Committee;

(2) The Report of Plan Voting dated July 10, 2018 [D.E. No. 453], which states that (i) Classes I, II, III, VIII and IX, which are impaired, voted to accept the Plan; (ii) Classes IV and V, which are impaired, voted to reject the Plan; (iii) Classes III and VI, which are impaired, did not cast a ballot and therefore, neither accepted nor rejected the Plan; and (iv) Class X, which is not impaired, was deemed to have accepted the Plan;

---

[1] Capitalized terms not defined herein have the meaning given to them in the Plan.

[2] The record will be referred to herein by the case docket number captioned above as "[D.E. No[s]. ___ ]".

(3) The testimony of the witnesses provided at the Confirmation Hearing; the evidence adduced at the Confirmation Hearing; the stipulations of the parties on the record at the Confirmation Hearing; and the arguments of counsel; and

(4) After due deliberation thereon and good cause appearing therefor, and for the reasons set forth on the record at the Confirmation Hearing,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A. The Court has jurisdiction over these Chapter 11 cases in accordance with 28 U.S.C. §§ 157, 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408, 1409;

B. Confirmation of the Plan is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (L) and (O), and thus, the Court has the authority to issue a final order with respect thereto;

C. The solicitation materials and notices prescribed by the Order entered by the Court on June 7, 2018 [D.E. No. 431] (the "Solicitation Order") were served in compliance with the Solicitation Order, and such service was adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other deadlines and matters required to be noticed pursuant to the Solicitation Order was given in compliance with the Federal Rules of Bankruptcy Procedure and the Solicitation Order, and no other or further notice is or shall be required;

D. All procedures used to distribute the solicitation materials to the appropriate creditors entitled to vote on the Plan and to tabulate the ballots returned by creditors were fair and were conducted in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Solicitation Order. Votes for acceptance or rejection of the Plan were solicited in good faith and only after transmittal of the Disclosure Statement which contained adequate information in compliance with 11 U.S.C. §§ 1125 and 1126, and Fed. R. Bankr. P. 3017 and 3018;

E.    Based on the record before the Court in these Chapter 11 cases, the Plan Proponents, the Plan Proponents' professionals, and all of their respective officers, directors, employees and agents have acted in good faith within the meaning of 11 U.S.C. § 1125(e), and in compliance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Solicitation Order in soliciting acceptances of the Plan and are entitled to the protections afforded by § 1125(e);

F.    The Debtors have met their burden of proving the elements of 11 U.S.C. § 1129 by a preponderance of the evidence, which is the applicable evidentiary standard. All in all, the Plan complies with §§ 1122, 1123, 1126, 1127, and all applicable provisions of § 1129.

G.    The Plan is dated and identifies the Debtors and the Committee as the Plan proponents, thereby satisfying Fed. R. Bankr. P. 3016(a).

H.    After due deliberations thereon and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED AS FOLLOWS**:

1.    The Plan shall be, and hereby is, confirmed pursuant to 11 U.S.C. § 1129 and the other applicable provisions of the Bankruptcy Code.

2.    Any objections to confirmation of the Plan, with the sole exception of the objection of DALMATIA IMPORT GROUP, INC. ("Dalmatia) [D.E. No. 459] (hereinafter, the "Dalmatia Objection"), which is addressed in Paragraph 9(d) below, that have not been withdrawn prior to the entry of this Confirmation Order are hereby overruled in their entirety, and any withdrawn objections are hereby deemed withdrawn with prejudice.

3.    The Plan and its provisions (*including the exhibits thereto and referenced herein, and all documents and agreements executed pursuant to the Plan*) shall be binding upon (a) the Debtors; (b) all holders of Claims against and Interests in the Debtors, whether or not impaired

3

under the Plan, and whether or not, if impaired, such holder accepted the Plan; (c) any other party-in-interest; and (d) any person making an appearance in these Cases.

4. The Debtors and the Reorganized Debtors retain and may enforce any and all claims of the Debtors and their Estates as set forth in Articles III and V of the Plan.

5. No fees to the Clerk of the Court are due (*or any such fees shall be paid within ten (10) days from the date of this Confirmation Order*).

6. In accordance with 11 U.S.C. § 1141(b), the confirmation of the Plan vests all of the property of the Estates in the Reorganized Debtors.

7. In accordance with 11 U.S.C. § 1142, upon the entry of this Confirmation Order, the Debtors and the Reorganized Debtors, acting by and through their officers, partners and agents, are hereby authorized to take any and all actions necessary or appropriate to implement the Plan, without any further Order of the Court.

8. In accordance with 11 U.S.C. § 1142(b), and without further action by the Bankruptcy Court, the Reorganized Debtors shall be authorized to (a) obtain a loan from BIG SHOULDERS CAPITAL LLC ("Big Shoulders") in the amount of up to $1,300,000, secured by a first prior and perfected lien, and security interest in and to all of the tangible and intangible personal property assets of the Reorganized Debtors (the "Big Shoulders Exit Financing Secured Loan"), (b) enter into, execute and deliver all loan agreements, security agreements, notes and all such other documents and agreements requested by Big Shoulders, all in form and substance acceptable to Big Shoulders, evidencing the Big Shoulders Exit Financing Secured Loan (collectively, the "Big Shoulders Exit Financing Loan Documents"), (c) perform all obligations under the Big Shoulders Exit Financing Loan Documents, and (d) take all other actions and execute, deliver, record and file all such other agreements, documents, instruments, financing statements, releases, applications, registration statements, reports and any changes, additions

and/or modifications thereto in connection with the consummation of the transactions contemplated by the Big Shoulders Exit Financing Loan Documents, including, without limitation, the making of such filings or recordings of such first prior and perfected liens and security interests of Big Shoulders. The Big Shoulders Exit Financing Secured Loan shall only be made by Big Shoulders upon the satisfaction of all conditions set forth in the Big Shoulders Exit Financing Loan Documents. Upon the full execution by the Reorganized Debtors of the Big Shoulders Exit Financing Loan Documents, Big Shoulders shall have a first prior and perfected lien and security interest in and to all of the tangible and intangible personal property assets of the Reorganized Debtors. This decretal Paragraph 8 expressly modifies the Plan with respect to the Big Shoulders Exit Financing Secured Loan.

9. In accordance with 11 U.S.C. § 1127, the Plan is also expressly modified as contemplated under Paragraph 5.3 of the Plan, as follows:

(a) Existing Paragraph 3.1 A, on page 10, is deleted and replaced with the following:

... **A. Payment of Allowed Claim of Change.** Change and Midtown shall be paid the amount of $1,035,000.00 on closing of the Big Shoulder Capital Loan, plus a $100,000 secured note from the Debtors to Change and Midtown and/or their assignors, subordinated only to the Big Shoulder Capital Loan (the "Note"). The Note shall be payable with no interest in seventy-seven (77) equal monthly installments commencing thirty (30) days after the Effective Date. The payment described herein to Change and Midtown shall resolve all amounts owed to Change and Midtown pursuant to Class 1 and Class 2. Class 1 and Class 2 claims will be senior to all other creditors except for Big Shoulders.

(b) Existing Paragraph 3.2 A, on page 11, is deleted and replaced with the following:

... **A. Payment of Allowed Claim of Midtown.** Midtown shall be paid, for the purposes of this Plan, in accordance to the terms of Article III Paragraph 3.1 A above.

(c) Existing Paragraph 3.4 on pages 11 and 12, addressing Class 4 is deleted and replaced with the following:

... **3.4 Class 4. <u>Allowed Claim of Fox.</u>** Class 4 is impaired. Pursuant to an agreement of Fox, the Debtors and the Committee, Fox shall hold an Allowed Claim in the amount of $2,202,155.95 [$2,446,839.94, minus a ten (10%) percent discount] (hereinafter, the "Fox Allowed Unsecured Claim"). In addition, pursuant to the parties' agreement, upon the Effective Date of the Plan, Fox shall execute the requisite U.C.C. statement terminating its security interest in all assets pledged by the Debtors. The Fox Allowed Unsecured Claim shall be treated in the same manner as an Allowed Unsecured Claim in Classes 8 and 9.

**A. <u>Payment of Allowed Claim of Fox.</u>** The Fox Allowed Unsecured Claim shall be paid as contemplated under Paragraph 3.8 of the Plan, as amended herein. In addition, as agreed by the parties, the Debtors have the right to pay $350,000 (*in addition to any payments already received by Fox as a member of Classes 8 and 9*) (the "Accelerated Payment") as full and final settlement of the Fox Allowed Unsecured Claim, if such Accelerated Payment is made within one (1) year of the entry of the Confirmation Order.

(d) Existing Paragraph 3.5, at the top of page 12, addressing Class 5 is deleted and replaced with the following:

... **3.6 Class 5. <u>Allowed Claim of Dalmatia.</u>** Class 5 is impaired. Dalmatia holds an allowed claim in the amount of $ $1,758,871 pursuant to a settlement stipulation approved by the Bankruptcy Court on March 2, 2018.

**A. <u>Payment of Allowed Claim of Dalmatia.</u>** Dalmatia will be paid ten (10%) percent of its claim as per the stipulation approved on March 2, 2018 in full satisfaction of its claim. These payments will be paid quarterly in 4.5 years. The other obligations of the stipulation will stay in force against the parties to the stipulation. Dalmatia has filed the Dalmatia Objection in which it objects to the Class 5 treatment under the Plan. Notwithstanding the Dalmatia Objection, Dalmatia, the Debtors and the Committee have agreed that this Confirmation Order could be entered as a final Order and that Dalmatia, the Debtors and the Committee would retain the right to press their respective arguments for and against the Dalmatia Objection and its attempt to be treated as a Class 8 and/or 9 Claim. On or within thirty (30) days of the date of the entry of the Confirmation Order, Dalmatia shall file a praecipe to set a hearing date on the argument of the Dalmatia Objection on the issue of whether Dalmatia should remain as a Class 5 Claimant or be reclassified to a Class 8 and/or 9 Claim.

(e) Existing second Paragraph 3.5, on the middle of page 12, addressing Class 6 is renumbered as Paragraph 3.6.

(f) Existing Paragraph 3.6, on page 12, addressing Class 7 is renumbered as Paragraph 3.7.

(g)  Existing Paragraph 3.9, on page 13, addressing Classes 8 and 9 is deleted, renumbered and replaced with the following:

... **3.8  Class 8 and 9.  Allowed Unsecured Claims of Lancaster Fine Food, Inc. and Earth Pride Organics.** Class 8 and 9 are impaired and consist of Allowed general Unsecured claims ("GUC") not otherwise classified. Class 8 and 9 creditors shall receive a payment equal to fifteen (15%) percent of their Allowed Claim payable in years 1 through 5 at three percent (3%) per year. These payments will commence 120 days after confirmation and thereafter, all payments will be paid out on a monthly basis on or before the twentieth (20th) day of each month. In Years 6, 7 and 8, Class 8 and 9 creditors shall be paid eight percent (8%) of their Allowed Claims on a monthly basis for a total guaranteed dividend of thirty nine percent (39%) (The "Guaranteed GUC Dividend"). In addition to the Guaranteed GUC Dividend, and depending on a tax enhancement in which any income the Debtor saves pursuant to the application of Net Operating Losses available to the Debtor, and/or a reduction in tax rates below fifty percent (50%) assumed in the Plan, any such tax savings shall be split 50/50 between the Debtors and Class 8/9 Allowed Claims up to fifty percent (50%) of each Class 8 and 9 Allowed Claims, minus distributions already made under the Plan. Joint Creditors of Classes 8 and 9 shall receive one single satisfaction for their Allowed Claim.  In addition, in the event of the sale of either of the Debtors, all payments to Class 8 and 9 Claimants shall be accelerated such that each such claimant shall receive a payment up to fifty percent (50%) of each Class 8 and 9 Allowed Claim, minus distributions already made under the Plan, on the closing date of the Sale of one or more of the Debtors.  In addition, if one or both of the Debtors refinance, Class 8 and 9 Claimants shall receive fifty percent (50%) of any distributions to equity up to fifty percent (50%) of each Class 8 and 9 Allowed Claim, minus distributions already made under the Plan, on the closing date of the refinance.

(h)  Existing Paragraph 4.1(d), on pages 14 and 15, addressing payment of Allowed Administrative Claims is deleted and replaced with the following:

... **(d)  Payment of Allowed Administrative Claim.** Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the later of the Effective Date or such a date as when allowed by Final Order of the Bankruptcy Court, or (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder as long as no payment is made thereon prior to the Effective Date, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtors may be paid in the ordinary course of business.

  (i)  Existing Paragraph 8.4, on page 21, addressing the Committee is deleted and replaced with the following:

 ... **8.4**  **Unsecured Creditors Committee.** On the eight (8) year anniversary of the Effective Date or upon payment in full of the distributions to Class 8 and 9 Creditors, the Unsecured Creditors Committee shall be dissolved and no longer in existence provided no default has occurred under the Plan. Any outstanding fees owed to the Unsecured Creditors Committee's professionals shall be subject to Paragraph 4.1(b) of the Plan. Subsequent to confirmation, the purpose of the Unsecured Creditors Committee shall be limited to the review and approval of the distribution schedule and payments to Unsecured Creditors pursuant to the terms of the Plan, unless a default has occurred under the Plan. As long as the Debtors are in compliance with this Plan there will be no fee charged by the Committee or its Professionals. The Committee and its professionals are permitted to bill the Debtors for work performed; however, the Committee and its professionals shall be limited to a cap of $15,000.00 per year for this service, subject to review and objection, if necessary, by the Debtors. The cap will be inapplicable in the event of a default under the Plan concerning payment to the unsecured creditors.

All of the modifications identified on decretal Paragraphs 8 and 9(a)-(i) above (the "Modifications") are hereby approved and confirmed as contemplated under Article XI of the Plan. This being so, any references to the Plan hereinafter shall include the Modifications.

  10.  The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of any such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

  11.  If there is any inconsistency between the provisions of this Confirmation Order and the provisions of the Plan, the provisions of the Confirmation Order shall govern and control.

  12.  On and after the Effective Date of the Plan, any requirement that a Professional Person comply with 11 U.S.C. §§ 327 through 331 in seeking retention or compensation for services rendered after the Effective Date shall terminate and the Debtors may employ and pay all Professional Persons, including payments to the Professional Persons employed by the

Committee, in the ordinary course of business without any further notice to, action by, or Order or approval of the Bankruptcy Court.

13. The Debtor or its authorized agent(s) shall serve a notice of entry of this Confirmation Order by regular mail, as provided in Fed. R. Bankr. P. 2002(f)(7), within fourteen (14) Business Days from the date of entry of this Confirmation Order.

**BY THE COURT:**

_____
THE HONORABLE ERIC L. FRANK
UNITED STATES BANKRUPTCY JUDGE