IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | Case No. 17-13816 (ELF) |
| | ) | |
| EARTH PRIDE ORGANICS, LLC, *et al.* | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**RESPONSE OF LOEB TERM SOLUTIONS LLC TO: (A) POSITION STATEMENT OF CHANGE CAPITAL PARTNERS FUND 1 AND MIDTOWN CAPITAL PARTNERS, LLC REGARDING: (I) LIFT STAY MOTION OF LOEB TERM SOLUTIONS LLC; AND (II) DEBTORS' REQUEST FOR INJUNCTIVE RELIEF AGAINST LOEB TERM SOLUTIONS LLC; AND (B) OBJECTIONS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF LOEB FOR RELIEF FROM THE AUTOMATIC STAY**

Loeb Term Solutions LLC ("*Loeb*"), by and through its undersigned counsel, hereby responds to the *Position Statement of Change Capital Partners Fund I and Midtown Capital Partners, LLC regarding: (I) Lift Stay Motion of Loeb Term Solutions LLC; and (II) Debtors' Request for Injunctive Relief against Loeb Term Solutions LLC* [Docket No. 620] (the "*CCP/Midtown Objection*"); and the *Objections of The Official Committee of Unsecured Creditors to Motion of Loeb for Relief from the Automatic Stay* [Docket No. 621] (the "*Committee Objection*"), and states as follows:

**CCP/MIDTOWN OBJECTION:**

1.      Change Capital Partners Fund I, LLC and Midtown Capital Partners, LLC (collectively, "*CCP/Midtown*") argue that Loeb should not be entitled to the benefit of its bargain with the Debtors because it was "secret" and was not approved by the Court. It should be noted that no participant in these cases except the Debtors filed an objection to Loeb's Motion for Relief by the original objection deadline of November 26, 2018. It is only now, on the eve of a thrice-continued hearing, that CCP/Midtown decided to object. Loeb negotiated an

agreement to resolve its Motion for Relief with the only objector, the Debtors, prior to the hearing scheduled for December 19, 2018, and when the Debtors failed to comply with their obligations under that agreement, Loeb was planning to present the consent order at the January 9th hearing for Court approval. This plan was stymied by Debtors' Motion for Injunctive Relief. There was nothing "secret" about the agreement, and in fact, counsel for Loeb discussed the contents of the agreement with CCP/Midtown's counsel the afternoon before the hearing that was continued pursuant to the terms of the agreement (December 19, 2018).

2. Further, the Debtors were well within their rights to make this agreement with Loeb without consulting CCP/Midtown (or the Committee) and without seeking prior court approval. The Confirmation Order expressly provides that the Debtors are "authorized to take any and all actions necessary or appropriate to implement the Plan, without any further Order of the Court." Confirmation Order [Docket No. 502] at ¶7. Without this agreement, the Debtors would have faced a hearing on the Motion for Relief, and risked losing the ability to implement the Plan. Entering into this agreement with Loeb gave the Debtors additional time to obtain the financing and finalize the documents necessary to implement the Plan, in exchange for certain agreed-upon concessions and obligations, for which Loeb gave substantial consideration.

3. Contrary to CCP/Midtown's assertions, the agreement between the Debtors and Loeb does not provide Loeb with a "windfall." Loeb has not received any adequate protection payments from the Debtors since early August 2018, and has been forces to incur significant attorneys' fees and costs that have not been repaid. The Debtors were asking Loeb to (a) reduce and freeze the amounts due to it; and (b) wait an additional three weeks (after the hearing had already been continued for two weeks from its original date) for either payment or relief. In exchange for these concessions, the Debtors agreed to a "drop-dead" date for payment, and an upfront good faith payment that, if the Debtors failed to close, would convert to a forbearance

fee. The Debtors, in the exercise of their business judgment, believed that this agreement gave them the best opportunity to implement the Plan, and, as such, the agreement was expressly allowed by Paragraph 7 of the Confirmation Order.

4. CCP/Midtown argues that the Court should not grant Loeb relief from the stay because such action would result "in a termination and collapse of the Debtors' reorganization." CCP/Midtown Objection at ¶2. Loeb asserts that its action does not necessarily mean that the Debtors will collapse. If, in fact, the Debtors have the funds that they have long claimed to have, but have repeatedly failed to pay to Loeb, then they can use those funds to purchase replacement equipment or bid on the equipment at the public auction to be held. Alternatively, another interested party, even CCP/Midtown itself, can bid on the equipment and, if they prevail, allow the Debtors to continue using it in their operations. Based on the Debtors' failure to consummate the Plan by the Effective Date, Loeb's Motion was well-founded, and the relief requested well-deserved, when it was filed and noticed for initial presentment in early December. Now, in early February, the Court can, and should, grant relief from the stay for cause, irrespective of the effect on the reorganization. 11 U.S.C. § 362(d)(1). Loeb should not be held hostage when it is clear that the Debtors have not been able to close on the exit financing more than three months after the Effective Date.

5. CCP/Midtown also argues that since the Debtors were negotiating Loeb's claim, it had no reason to question it. It then reminds the Court that it has a second lien on the equipment. Despite having clear financial incentives to review Loeb's claim, CCP/Midtown claims it opted not to do so until now. Loeb filed its proofs of claim in these cases on August 10, 2017. For nearly a year and a half, no one objected to its claim. Loeb has consistently provided information to the Debtors to back up the amounts due to it, and the Debtors agreed to those

amounts and specifically provided that the Loeb claim was allowed in the Plan. Now, only because the Debtors' principal has been unable to fund his contribution to the amounts needed for closing (which Loeb has consistently predicted throughout this case, and specifically at the confirmation hearing), other parties not only want Loeb to compromise its claim, they want the court to force Loeb to do so. Loeb's claim, however, has already been allowed under the Plan. *See* Plan at ¶1.6(b) ("Allowed Claim" is defined in the Plan as, inter alia, "a Claim which is specified herein to be an Allowed Claim."), ¶2.2 ("Class 3 consists of the Allowed Secured Claim of Loeb.") and ¶3.3 (same).

6. Finally, CCP/Midtown asserts, without any evidence, that if Loeb is granted relief from the stay as provided for in the Stipulation and Agreed Order, somehow the liquidation of the equipment would not be accomplished in a commercially reasonable manner, or that CCP/Midtown would not be able to participate. There is simply no evidence that Loeb would not auction this equipment off in a commercially reasonable manner consistent with the Uniform Commercial Code. Loeb is bound by the same rules as CCP/Midtown, and to the extent the auction brings a value to pay Loeb in full, any remaining funds will be paid to CCP/Midtown in accordance with the applicable laws of the Commonwealth. CCP/Midtown's untimely, and baseless, objections should be overruled.

**COMMITTEE OBJECTION**

7. Initially, the Court should not even consider the Committee Objection because it was not filed until 12:26 p.m. on January 30, 2019, well after the Court's deadline to do so of 12:00 noon. The Court's Order expressively stated that "Failure to comply with the requirements of Paragraphs 1 and 2 will bar a party from offering evidence at the hearing . . ." Order dated January 24, 2018, Docket No. 611. The Committee's untimely objection should be barred in its entirety. If, however, the Court decides to consider the arguments made, Loeb asserts that the

Committee is mis-interpreting both the language of the Plan and the law.

8. The Committee Objection is predicated on the Debtors' Plan having been substantially consummated. This is a laughable position. The Debtors have done nothing that could be considered consummation of the Plan. Substantial consummation requires:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; **and**
(C) Commencement of distributions under the plan.

11 U.S.C. § 1101(2) (emphasis added). All three elements must be present. Here, no property has been transferred, and no distributions have been made. Other than the original management continuing to operate the Debtors, which arguably may satisfy section 1101(2)(B), the Debtors have not fulfilled any of the other requirements to consummate the Plan. *See, e.g., Hudson v. Shields (In re Hudson)*, 1999 U.S. App. LEXIS 40480, at *3 (5th Cir. 1999) (Court found no substantial consummation where debtor did not make any payments under the plan to creditors).

9. The Committee then argues that Loeb did not retain its lien in the Debtors' equipment, but rather exchanged that lien for a promise of payment. That is patently incorrect. The Plan specifically provides that Loeb would only release its liens upon payment of "all amounts due and owing under the Term Promissory Note dated September 9, 2016." Plan at §3.3. This payment, of course, has never happened.

10. Further, section 3.3 of the Plan specifically references that Class 3 "consists of the Allowed Secured Claim of Loeb. This joint claim **is secured by**, inter alia, a lien on the equipment located at 501 Richardson Drive, Lancaster, PA." *Id.* (emphasis added). It does not say "was secured by," nor does it reference any extinguishment of the lien, except upon payment, in full, of all the amounts due. Section 506(d) of the Bankruptcy Code, in essence,

provides that a secured creditor's lien passes through the bankruptcy unaffected. See also, *Long v. Bullard*, 117 U.S. 617, 620-21, 6 S.Ct. 917,918, 29 L.Ed. 1004,1006 (1886).

11. The Debtors also never made any reference to extinguishment of liens in their Disclosure Statement [Docket No. 429]. In fact, the Debtors reference that the Big Shoulders funds will be used to pay "Midtown's and Loeb's **secured debt**.... This loan agreement will allow the Debtors to satisfy the three secured loans from Loeb, Midtown Capital Partners, LLC and Change Capital Partners Fund, I." Disclosure Statement at §IV.A. Further, section IV.A.2. echoes the language of the Plan, stating that Loeb "is secured by" a lien on the equipment. *Id.* At IV.A.2. If the Debtors' intent was to extinguish Loeb's lien upon confirmation, it would have had to be disclosed, in order to comply with the "statutory mandate that a disclosure statement contain information sufficient to allow an informed decision about the plan." *General Electric Credit Corp. v. Nardulli & Sons, Inc.*, 836 F.2d 184, 189 (3rd Cir. 1988). Considering neither the Debtors nor CCP/Midtown made this argument, it is clear that Loeb never agreed to release the liens upon confirmation, but only upon payment, in full, of the amounts due to it.

12. The Committee cites to law in the 2nd and 7th Circuit to support its argument that Loeb somehow agreed to discharge its lien prior to payment under the Plan. However, this reliance is misplaced. The District Court for the Eastern District of Pennsylvania specifically rejected the reasoning in *In re Penrod*, 50 F,3d 459 (7th Cir. 1995), one of the cases cited by the Committee, stating that "a lien which has not been disallowed or avoided survives the bankruptcy proceeding." *Coffin v. Malvern Fed. Sav. Bank*, 189 B.R. 323, 327 (E.D. Pa. 1995), *see also Estate of Lellock v. Prudential Ins. Co.*, 811 F.2d 186, 189 (3rd Cir. 1987) ("valid liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt"). Loeb's lien has not been disallowed or avoided. In fact, the Debtors' express language in the Plan allows the lien and refers to Loeb's claim as "secured" throughout the Plan. *General*

*Electric Credit Corp. v. Nardulli & Sons, Inc.*, 836 F.2d at 189 ("We interpret the plan's reference to [the secured creditors] as secured creditors as a recognition of the continued validity of their previously perfected security interests.").

13. Additionally, there is no express language in the Plan that the property of the estate vests in the Reorganized Debtors "free and clear" of any lien. Also, the Confirmation Order simply states that, "In accordance with 11 U.S.C. § 1141(b), the confirmation of the Plan vests all of the property of the Estates in the Reorganized Debtors." Confirmation Order at ¶6. That is because it is not "free and clear" of Loeb's (or Midtown's, for that matter) liens. There was no intent to vest the equipment in the Reorganized Debtors "free and clear" of the liens.

14. The Committee also argues that there has been no default under the Plan, because there is no requirement that Loeb be paid on the Effective Date. That is not accurate either, and requires another painful reading of the Plan language. The Plan provides for payment to Loeb "[o]n the Effective Date or such other date otherwise agreed to by the Debtors and Loeb. Loeb had tried to work with the Debtors to find a payment date that worked, but had no agreement in place at the time the Motion for Relief was filed. Subsequently, Loeb had agreed to accept payment of a reduced amount on or before January 7, 2019, in exchange for the concessions made by the Debtors in the agreed order that is the subject of the Debtors' TRO Motion. However, that date has also passed, and no further agreement has been reached. The Debtors are in default of their obligations under the Plan, and their subsequent agreement with Loeb.

15. Loeb already addressed the agreement reached with the Debtors in paragraphs 1 and 2, above, and addressed the issue of whether Loeb has an allowed claim in paragraph 5, above. The Committee's untimely, and baseless, objections also should be overruled.

**WHEREFORE**, for the foregoing reasons, Loeb respectfully requests that the Court enter an Order: (a) denying the Debtors' Motion For Injunctive Relief, (b) granting Loeb relief from the stay under the terms of the Stipulation and Agreed Order, and (c) granting such other and further relief as the Court deems just and proper.

Dated: January 31, 2019               Respectfully submitted,

**GOLDSTEIN & MCCLINTOCK, LLLP**

*/s/ Maria Aprile Sawczuk*
Maria Aprile Sawczuk, Esq. (PA Bar No. 70011)
501 Silverside Road, Suite 65
Wilmington, Delaware 19809
Telephone: (302) 444-6710
Facsimile: (302) 444-6709
E-mail: marias@restructuringshop.com

*Counsel to Loeb Term Solutions LLC*