IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: EARTH PRIDE ORGANICS, LLC, | : |  |
| and LANCASTER FINE FOODS, INC., | : |  |
|  | : |  |
| Debtors. | : | CIVIL ACTION NO. 18-mc-186 |

**MEMORANDUM OPINION**

Smith, J.                                                                                   May 23, 2019

 The undersigned presided over a jury trial pertaining to, *inter alia*, the debtors'
misappropriation of trade secrets of a company which produces various food items, including fig
spreads. The jury returned a verdict largely in favor of this company and against the debtors. A
few months after the jury's verdict, the debtors filed for chapter 11 bankruptcy.

 During the post-trial motions phase of the litigation, the parties entered into a settlement
agreement after extensive negotiation before the undersigned. The settlement agreement contained
language by which this court would retain jurisdiction over disputes arising under the agreement.
The agreement also stated that the fig spread company would "have the ability to pursue its current
[unsecured] claim in Bankruptcy Court but will support any plan not inconsistent with this
agreement as long as it pays out at least 10%."

 In their final proposed chapter 11 reorganization plan, the debtors treated the fig spread
company differently than other unsecured creditors. More specifically, while the plan provided
that the fig spread company would receive 10% of its claim, the other unsecured creditors would
receive at least 39% and possibly up to 50% of their claims. The fig spread company filed an
objection to this plan, and the bankruptcy court scheduled a hearing on the objection.

 The fig spread company then filed a motion for this court to withdraw the reference to the
bankruptcy court. The fig spread company's argument is that they have shown cause as to why the

court should permissively withdraw the reference in large part because of the court's involvement in the underlying proceedings, the undersigned's role in negotiating the settlement, and this court's retention of jurisdiction over matters arising from the settlement agreement.

The debtors oppose the motion noting that the objection to confirmation of the plan is a "core" proceeding under 28 U.S.C. § 157(b)(2), which the bankruptcy court should address. In addition, they argue that the fig spread company has mistakenly stated that resolving the objection is premised only on interpreting the settlement agreement. Instead, they contend that the issue is whether the debtors have unfairly discriminated against the fig spread company in contravention of 11 U.S.C. § 1129. They also note that the bankruptcy court is sufficiently familiar with the proceedings to be able to address the objection and any issues with interpreting the language of the settlement agreement.

For the reasons stated below, the court agrees with the debtors that the objection to the confirmation of the plan is a "core" proceeding under 28 U.S.C. § 157(b)(2) which weighs against withdrawing the reference. In addition, the other factors relevant to the court's consideration of permissively withdrawing the reference in this case weigh against withdrawal. Accordingly, the movant has failed to show cause warranting permissive withdrawal of the reference, and the court denies the motion for withdrawal of reference.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The debtors, Earth Pride Organics, LLC ("EPO") and Lancaster Fine Foods, Inc. ("LFF") (collectively, the "Debtors"), were formed to "manufactur[e] various food products including but not limited to mustard, sauces, marinades, hot sauces, salad dressings, etc." Fourth Am. Jt. Disclosure Statement with Respect to Fourth Am. Plan of Reorganization Proposed by Earth Pride Organics, LLC and Lancaster Fine Foods, Inc., Debtors-in-Possession, and the Official Committee

of the Unsecured Creditors ("Disclosure Statement") at 4, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 429. "EPO is the parent company to LFF and both companies share employees and other various assets." *Id.*

On May 31, 2017, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania. *See* Voluntary Pet. for Non-Individuals Filing for Bankr., *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 1; Voluntary Pet. for Non-Individuals Filing for Bankr., *In re: Lancaster Fine Foods, Inc.*, No. 17-13819-elf (Bankr. E.D. Pa.), Doc. No. 1. The Debtors asserted that they had to file for bankruptcy because

> [i]n 2014, the Debtors were actively producing a fig spread for a company called Dalmatia Import Group Inc. ("Dalmatia"). Due to numerous conflicts between the Debtors and Dalmatia concerning the production of their product, Dalmatia ceased placing orders with the Debtors, leaving the Debtors with a large supply of inventory. The Debtors, upon advice of counsel, liquidated this inventory on the open market in a commercially reasonable manner. Unfortunately, Dalmatia filed a trade secret lawsuit against them for the selling of these assets which resulted in a multi prong verdict both for and against the Debtors regarding this transaction. The time, attorney's fees and damages awarded by the jury on behalf of the Plaintiff, caused severe harm against the Debtors' operations and cash flow. Additionally, the Debtors had borrowed money from numerous lending institutions and factors at an interest rate which, in certain circumstances, exceeded forty (40%) percent which caused a severe drain on the day to day cash flow of the Debtors.

Disclosure Statement at 5.

Via an order dated June 9, 2017, the bankruptcy court authorized the joint administration of the Debtors' bankruptcy cases in accordance with Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. *See* Order, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 41; *see also* E-order, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 51. On July 3, 2017, Dalmatia filed a motion for relief from the automatic stay under 11 U.S.C. § 362.

*See* Dalmatia Import Group, Inc.'s Mot. for Relief from the Automatic Stay, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 98.

In the motion, Dalmatia explained that on February 28, 2017, a jury returned a verdict in its favor and against the Debtors on Dalmatia's claims for misappropriation of trade secrets, trademark infringement, and counterfeiting in violation of the Lanham Act, breach of contract related to a nondisclosure agreement, and conversion. *See id.* at 3. Dalmatia also noted that (1) the undersigned entered judgment in accordance with the jury's verdict on May 3, 2017; (2) the matter was in the post-trial motions phase with (a) the Debtors having not filed any such motions, (b) Dalmatia having filed a motion for a permanent injunction and renewed motions for judgment as a matter of law on its claims for breach of the noncompetition agreement, civil conspiracy, and unfair competition, and (c) Dalmatia having filed a motion for an award of attorneys' fees against the Debtors and the other defendants; (3) the undersigned stayed the motions with respect to the Debtors due to the automatic stay; and (4) the undersigned set a hearing date of August 1, 2017, for Dalmatia's post-trial motions to the extent they related to non-bankrupt defendants. *See id.* at 3–4 (referencing *Dalmatia Import Group, Inc., et al. v. Foodmatch, Inc., et al.*, Civ. A. No. 16-2767 (E.D. Pa.) (the "Fig Spread Action"), Doc. Nos. 321, 354).

On July 31, 2017, the bankruptcy court entered an order granting in part and denying in part Dalmatia's motion for relief from the automatic stay. *See* Order, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 134. In this order, the bankruptcy court lifted the stay to allow Dalmatia to proceed in the Fig Spread Action on its (1) claims for injunctive relief against the Debtors, and (2) renewed motion for judgment as a matter of law on its claim for breach of contract and for a permanent injunction. *See id.* at 1. The court denied all other requests for relief in the motion. *See id.* at 2.

The United States Trustee for Region 3 appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to 11 U.S.C. § 1102(a)(1) on August 14, 2017. *See* Appointment of Committee of Unsecured Creditors, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 146. The Debtors filed their original Chapter 11 plan of reorganization and disclosure statement on November 20, 2017, in accordance with 11 U.S.C. § 1121. *See* Plan of Reorganization Proposed by Debtors-in-Possession, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 239; Disclosure Statement Proposed by Debtors-in-Possession, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 240.

On October 11, 2017, Dalmatia, the Debtors, and the other parties to the Fig Spread Action settled the matter after a settlement conference with the undersigned.[1] The parties originally memorialized their agreement in a handwritten document, which included the following provision: "Dalmatia shall have the ability to pursue its current claim in Bankruptcy Court but will support any plan not inconsistent with this agreement as long as it pays out at least 10%." *See* Settlement Agreement at ECF p. 7. The agreement also stated that, *inter alia*, the parties would memorialize the agreement in a more formal, written settlement agreement. *Id.* at ECF p. 8. The parties created a more formal agreement, which the undersigned adopted and incorporated as an order of court via an order entered on January 29, 2018 (the "Settlement Agreement"). *See* Stip. and Order, *Dalmatia Import Group, Inc., et al. v. Foodmatch, Inc., et al.*, Civ. A. No. 16-2767 (E.D. Pa.), Doc. No. 395. The Settlement Agreement provided in pertinent part that

> [t]he parties agree that that the United States District Court for the Eastern District of Pennsylvania shall have continuing jurisdiction over all disputes arising from

---

[1] The Settlement Agreement is sealed. *See* Settlement Agreement, *Dalmatia Import Group, Inc., et al. v. Foodmatch, Inc., et al.*, Civ. A. No. 16-2767 (E.D. Pa.), Doc. No. 394.

this Agreement or the Action. Any such disputes shall be raised in this Action, unless that is impossible, in which case they shall be raised in a separate action to be designated by the filing party as related to the Action. The parties shall not object to any such disputes being resolved in the United States District Court of the Eastern District of Pennsylvania, Easton Division. Any disputes asserted by or through any other party in interest in the bankruptcy cases shall be raised in the Bankruptcy Court. Any dispute arising from or related to this Agreement shall be governed by the law of Pennsylvania.

*See* Settlement Agreement at ECF p. 4.

On January 23, 2018, the Debtors filed a motion with the bankruptcy court for the approval of the Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. *See* Mot. of the Debtors for Approval of a Settlement Agreement Pursuant to Bankr. R. 9019, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. Nos. 304, 306. After a hearing on February 28, 2018, the bankruptcy court entered an order (1) granting the motion to approve the Settlement Agreement, (2) approving the Settlement Agreement, and (3) reserving any and all rights of the Committee, including "the right to object to or subordinate the Claim to the claims of other general unsecured creditors or object to any classification of such claim by the Debtors in any Plan of Reorganization." Order Approving Settlement Agreement, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 339; *see* E-order, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 340.

The Debtors filed amended versions of their Chapter 11 plan of reorganization and disclosure statement on March 12, 2018, April 27, 2018, and June 1, 2018. *See In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. Nos. 345, 346, 391, 393, 419, 421. In the original, March 12, 2018, and April 27, 2018 versions of the Chapter 11 plan, unsecured creditors such as Dalmatia were treated similarly as the plans provided that they would receive a payment equal to 15% of their allowed claim payable out over a five-

year period. *See* Plan of Reorganization Proposed by Debtors-in-Possession at 13-14, *In re: Earth*

*Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc.

No. 239; Am. Plan of Reorganization Proposed by Debtors-in-Possession at 12, 13, *In re: Earth*

*Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc.

No. 346; 2d Am. Plan of Reorganization Proposed by Debtors-in-Possession at 12–13, *In re: Earth*

*Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc.

No. 391.[2]

In the third amended Chapter 11 plan filed on June 1, 2018, the Debtors created a separate

class for Dalmatia apart from the other unsecured creditors. *See* 3rd Am. Plan of Reorganization

Proposed by Debtors-in-Possession at 9, *In re: Earth Pride Organics, LLC and Lancaster Fine*

*Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 419 (listing Dalmatia's allowed claim

as Class 5 and other unsecured creditors claims against EPO and LFF in Classes 9 and 10,

respectively). This third amended plan indicated that

> Dalmatia holds an allowed claim in the amount of . . . $1,758,871 pursuant to a
> settlement stipulation approved by the Bankruptcy Court on March 2, 2018.
> Dalmatia will be paid 10% of its claim as per the stipulation between the Debtors
> and Dalmatia. These payments will be paid quarterly in 4.5 years. . . .
>
> . . . Dalmatia will be paid 10% of its claim as per the stipulation approved on March
> 2, 2018 in full satisfaction of its claim.

*Id.* at 11–12. As for other unsecured creditors, the third amended plan stated that they would

receive a payment equal to 15% of their allowed claim "payable in years 1 through 5 at 3% per

year," then from years six through 8, the creditors would "be paid 8% of their claims on a monthly

basis." *Id.* at 13. In addition, for these other unidentified, unsecured creditors, the aforementioned

---

[2] The second amended Chapter 11 plan modified the terms of the pay out insofar as it more specifically set forth the
payments. *See* 2d Am. Plan of Reorganization Proposed by Debtors-in-Possession at 12–13, *In re: Earth Pride
Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 391.

Case 2:18-mc-00386-EGS   Document 9   Filed 08/23/19   Page 89 of 23

"payments may be increased in addition to being paid sooner depending on a tax enhancement in which any income the debtor saves pursuant to the application of Net Operating Losses available to the Debtor which will be split 50/50 between the Debtor and Class 9/10 claims." *Id.*

The Debtors filed a fourth amended Chapter 11 plan and disclosure statement on June 6, 2018. *See* Fourth Am. Jt. Plan of Reorganization Proposed by Earth Pride Organics, LLC and Lancaster Fine Foods, Inc., Debtors-in-Possession and the Unsecured Creditors Committee ("4th Am. Plan"), *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 428; Disclosure Statement. The fourth amended plan again treated Dalmatia differently than the other unsecured creditors. *See* 4th Am. Plan at 9, 10 (listing Dalmatia's allowed claim as Class 5 and other unsecured creditors' claims against EPO and LFF in Classes 8 and 9, respectively). In this regard, the plan again directed that Dalmatia would receive a payout of 10% of its claim "per the stipulation approved on March 2, 2018 in full satisfaction of its claim." *Id.* at 12. As for the other unsecured creditors, the plan provided in pertinent part as follows:

> Class 8 and 9 creditors shall receive a payment equal to fifteen (15%) percent of their allowed claim payable in years 1 through 5 at 3% per year. These payments will commence 120 days after confirmation and then all payments will be paid out on a monthly basis. In Years 6, 7 and 8, creditors shall be paid 8% of their claims on a monthly basis for a total guaranteed dividend of thirty nine percent (39%). These payments may be increased in addition to being paid sooner depending on a tax enhancement in which any income the debtor saves pursuant to the application of Net Operating Losses available to the Debtor which will be split 50/50 between the Debtor and Class 8/9 claims. Joint Creditors of Classes 8 and 9 shall receive one single satisfaction for their claim. []In addition, if one or both of the Debtors refinance, Class 8 and 9 Claimants shall receive fifty percent (50%) of any distributions to equity up to fifty percent (50%) of each Class 8 and 9 Claim.

*Id.* at 13.

Case 2:16-mc-00106-EGS   Document 9   Filed 08/23/19   Page 9 of 23

The fourth amended plan contained a retention of jurisdiction section, which states as follows:

The Court may retain jurisdiction of the case after the Confirmation Date for the following purposes:

(a) To determine any and all objections in the allowance of claims and amendments to schedules;

(b) To classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

(c) To determine any and all disputes arising under or in connection with the Plan, the sale of any of the Debtors' assets, collection or recovery of any assets;

(d) To determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e) To determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(f) To determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of, or after, the Confirmation Date;

(g) To determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

(h) To modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

(i) To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(j) To determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

(k) To enforce all discharge provisions under the Plan;

(I) To enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtors under the Bankruptcy Code, this Plan and as the Court may deem necessary.

*Id.* at 23–24.

The bankruptcy court approved the 4th amended joint disclosure statement via an order entered on July 7, 2018. *See* Order, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 431. The 4th amended plan received the requisite number of votes to meet the confirmation threshold. *See In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. Nos. 453, 454. Dalmatia then filed objections to confirmation of the 4th amended plan and the 4th amended disclosure statement on July 16, 2018. *See* Dalmatia Import Group., Inc.'s Obj. to Confirmation of Fourth Am. Plan of Reorganization Proposed by Debtors in Possession and Obj. to Disclosure Statement ("Dalmatia's Objs."), *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 459. In its objections, Dalmatia generally argues that "[t]he Disclosure Statement and Plan misrepresent the Litigation and Settlement, are not proposed in good faith, and unfairly seek to discriminate against Dalmatia." *Id.* at ECF p. 1.[3] Regarding the Plan, Dalmatia asserts that "the Debtors seek to discriminate unfairly against [it] by paying it a far lesser percentage of its claim than every other creditor in the case."[4] *Id.* at ECF p. 3.

---

[3] The court uses the pages designated on the electronic docketing system because the document is unpaginated.

[4] Concerning the 4th amended disclosure statement,

Dalmatia objects to the Debtors' false and misleading description of their dispute with Dalmatia and the Litigation, which they characterize as the reason for their bankruptcy. . . .

[] Up until late 2015, Lancaster Fine Foods manufactured Dalmatia's fig spread. Contrary to the Debtors' account set forth in the Disclosure Statement, Dalmatia did not "cease[] placing orders with the Debtors, leaving the Debtors with a large supply of inventory." . . . Rather, Dalmatia rejected multiple lots of fig spread because it failed to meet Dalmatia's quality requirements, and Dalmatia directed Lancaster Fine Foods to stop further production. Debtors' Disclosure states that

Dalmatia also argues that

> [c]ontrary to Debtors' representations, Dalmatia never agreed to support a plan in
> which it would be the only unsecured creditor paid 10% of its claim while all other
> unsecured creditors will be paid at least 39% and possibly up to 50% of their claims.
> Rather, the Settlement provides that Dalmatia, "will support any plan not
> inconsistent with this agreement as long as it pays out at least 10%." If Dalmatia
> had agreed to accept a plan that paid it 10% no matter what other creditors would
> be paid, the agreement would have said that Dalmatia would support any plan that
> pays it 10% of its claim. The actual wording of the settlement agreement makes
> clear that Dalmatia's intention was to support a plan that "pays out" to all unsecured
> creditors "at least 10%" of their claims.

*Id.* at ECF p. 4.

The bankruptcy court held a hearing on confirmation of the 4th amended plan on
September 6, 2018, at the end of which the court directed the parties to submit a proposed
confirmation order. *See* Minute Entry, *In re: Earth Pride Organics, LLC and Lancaster Fine
Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 498. The Debtors submitted a proposed
confirmation order on September 14, 2018. *See In re: Earth Pride Organics, LLC and Lancaster
Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 501. Three days later, the

---

they "liquidated this inventory on the open market in a commercially reasonable manner." This is a
lie. They did not sell the fig spread on the "open market," but rather they sold it *in secret* to
Dalmatia's former distributor, FoodMatch, Inc. They also continued manufacturing fig spread using
Dalmatia's trademark and trade dress without Dalmatia's knowledge or consent, and sold that
product in secret to FoodMatch, as well. Nothing about this was "commercially reasonable" – rather,
it was trademark infringement and counterfeiting in violation of the Lanham Act, as determined by
a jury verdict and judgment of the District Court.

[]        Debtors also fail to disclose that a jury found them liable for misappropriating Dalmatia's
trade secret fig spread recipe in creating a competing fig spread for FoodMatch. Although the
Disclosure Statement conflates Dalmatia's trade secret claim with the trademark infringement, the
Debtors' theft of trade secrets was a separate tort. Debtors also were found liable for theft of
Dalmatia's property and for breach of a nondisclosure agreement.

[]        Debtors' Disclosure Statement makes it sound as though it is Dalmatia's fault that they are
in bankruptcy. The record should be clear that Debtors brought the lawsuit on themselves when they
decided to counterfeit and steal from Dalmatia. They were already in a precarious financial situation
before the lawsuit was filed. Moreover, Debtors chose to use bankruptcy proceedings to avoid the
judgment against them. None of that is Dalmatia's fault.

Dalmatia's Objs. at 2–3.


bankruptcy court entered an order confirming the 4th amended plan. *See* Order Confirming Fourth

Am. Jt. Plan of Reorganization Dated June 6, 2018, *In re: Earth Pride Organics, LLC and*

*Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 502.

The confirmation order provided in pertinent part:

[]        In accordance with 11 U.S.C. § 1127, the Plan is also expressly modified as contemplated under Paragraph 5.3 of the Plan, as follows:

. . .

[]        Existing Paragraph 3.5, at the top of page 12, addressing Class 5 is deleted and replaced with the following:

> [] **3.6 Class 5. <u>Allowed Claim of Dalmatia</u>.** Class 5 is impaired. Dalmatia holds an allowed claim in the amount of $ $1,758,871 pursuant to a settlement stipulation approved by the Bankruptcy Court on March 2, 2018.
>
>        **A. <u>Payment of Allowed Claim of Dalmatia</u>.** Dalmatia will be paid ten (10%) percent of its claim as per the stipulation approved on March 2, 2018 in full satisfaction of its claim. These payments will be paid quarterly in 4.5 years. The other obligations of the stipulation will stay in force against the parties to the stipulation. Dalmatia has filed the Dalmatia Objection in which it objects to the Class 5 treatment under the Plan. Notwithstanding the Dalmatia Objection, Dalmatia, the Debtors and the Committee have agreed that this Confirmation Order could be entered as a final Order and that Dalmatia, the Debtors and the Committee would retain the right to press their respective arguments for and against the Dalmatia Objection and its attempt to be treated as a Class 8 and/or 9 Claim. On or within thirty (30) days of the date of the entry of the Confirmation Order, Dalmatia shall file a praecipe to set a hearing date on the argument of the Dalmatia Objection on the issue of whether Dalmatia should remain as a Class 5 Claimant or be reclassified to a Class 8 and/or 9 Claim.

. . .

>        Existing Paragraph 3.9, on page 13, addressing Classes 8 and 9 is deleted, renumbered and replaced with the following:
>
>        **3.8 Class 8 and 9. <u>Allowed Unsecured Claims of Lancaster Fine Food, Inc. and Earth Pride Organics</u>.** Class 8 and 9 are impaired and consist of Allowed general Unsecured claims ("GUC") not otherwise classified. Class 8 and 9 creditors shall receive a payment equal to fifteen (15%) percent of their Allowed Claim payable in years 1 through 5 at three percent (3%) per year. These payments will commence 120 days after confirmation and thereafter, all payments will be paid out on a monthly basis on or before the

twentieth (20th) day of each month. In Years 6, 7 and 8, Class 8 and 9 creditors shall be paid eight percent (8%) of their Allowed Claims on a monthly basis for a total guaranteed dividend of thirty nine percent (39%) (The "Guaranteed GUC Dividend"). In addition to the Guaranteed GUC Dividend, and depending on a tax enhancement in which any income the Debtor saves pursuant to the application of Net Operating Losses available to the Debtor, and/or a reduction in tax rates below fifty percent (50%) assumed in the Plan, any such tax savings shall be split 50/50 between the Debtors and Class 8/9 Allowed Claims up to fifty percent (50%) of each Class 8 and 9 Allowed Claims, minus distributions already made under the Plan. Joint Creditors of Classes 8 and 9 shall receive one single satisfaction for their Allowed Claim. In addition, in the event of the sale of either of the Debtors, all payments to Class 8 and 9 Claimants shall be accelerated such that each such claimant shall receive a payment up to fifty percent (50%) of each Class 8 and 9 Allowed Claim, minus distributions already made under the Plan, on the closing date of the Sale of one or more of the Debtors. In addition, if one or both of the Debtors refinance, Class 8 and 9 Claimants shall receive fifty percent (50%) of any distributions to equity up to fifty percent (50%) of each Class 8 and 9 Allowed Claim, minus distributions already made under the Plan, on the closing date of the refinance.

*Id.* at 5–7.

In accordance with the order confirming the fourth amended plan, Dalmatia filed a praecipe on October 12, 2018, to set a hearing date on the issue of whether it "should remain as a Class 5 Claimant or be reclassified to a Class 8 or 9 Claim, pursuant to its Objection to the Plan filed on July 16, 2018[.]" Praecipe to Set a Hearing Date at 1, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 519. On October 16, 2018, the bankruptcy court set a hearing date on Dalmatia's objections for November 14, 2018. *See In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 521.

Dalmatia then filed the instant motion to withdraw reference with the bankruptcy court on October 29, 2018. *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-

Case 2:18-mc-00186-ECS    Document 9    Filed 05/29/19    Page 14 of 23

13816-elf (Bankr. E.D. Pa.), Doc. No. 530.[5] On November 5, 2018, Dalmatia filed a motion for a

stay pursuant to Rule 5011(c) of the Federal Rules of Bankruptcy Procedure and for expedited

consideration pursuant to Local Bankruptcy Rule 5070-1(f) or, in the alternative, for an

adjournment. *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-

elf (Bankr. E.D. Pa.), Doc. No. 538. On the same date, the bankruptcy court entered an order

granting Dalmatia's request for expedited consideration and scheduling a hearing on the motion to

stay on November 8, 2018. *See* Order at 1, *In re: Earth Pride Organics, LLC and Lancaster Fine

Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 539.

The bankruptcy court held a hearing on Dalmatia's motion for stay and for expedited

consideration on November 8, 2018.[6] *In re: Earth Pride Organics, LLC and Lancaster Fine Foods,

Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 552. On November 13, 2018, the bankruptcy

court entered an order which, *inter alia*, (1) denied the part of the motion insofar as Dalmatia

requested a stay of the proceedings relating to its objection to its treatment in the confirmed fourth

amended plan, (2) granted the part of the motion insofar as Dalmatia sought a continuance of the

hearing on its objection, and (3) rescheduled the hearing on the objection to December 21, 2018.

*See* Order, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf

(Bankr. E.D. Pa.), Doc. No. 549. On the same date, the Debtors filed a memorandum of law in

opposition to Dalmatia's motion for withdrawal of the reference. *See* Doc. No. 4.

It appears that the bankruptcy court held a hearing on Dalmatia's objection to the fourth

amended plan on December 21, 2018. *In re: Earth Pride Organics, LLC and Lancaster Fine

---

[5] The bankruptcy court transmitted the motion to the clerk of this court, and the clerk of court docketed the motion as
a miscellaneous matter on October 30, 2018. The case was originally assigned to the Honorable Harvey Bartle, III,
but Chief Judge Juan R. Sanchez reassigned it from Judge Bartle's calendar to the undersigned's calendar on
November 15, 2018. Doc. No. 7.
[6] The transcript of the hearing was docketed here at Doc. No. 3.

*Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 595. Then, on December 21, 2018, the

bankruptcy court entered an order which (1) indicated that the parties reported to the court that

they would engage in settlement discussions, and (2) set forth a schedule should the parties not

settle the matter. *See* Order at 1, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*,

No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 596. Dalmatia and the Debtors were unable to settle

the matter, so the bankruptcy court entered an order on February 5, 2019, requiring the parties to

submit a memorandum of law in support of their respective positions by April 1, 2019, and file a

reply memorandum by April 15, 2019. *See* Order, *In re: Earth Pride Organics, LLC and Lancaster

Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 632.

On March 8, 2019, the bankruptcy court entered an order suspending the briefing schedule

on Dalmatia's objection, pending further order of court.[7] *See* Order, *In re: Earth Pride Organics,

LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 658. The

bankruptcy court entered an order on April 17, 2019, requiring Dalmatia and the Debtors to submit

a joint proposed order setting a deadline for the filing of briefs pertaining to Dalmatia's objection.

*See* Order, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf

(Bankr. E.D. Pa.), Doc. No. 673. On April 23, 2019, the bankruptcy court approved Dalmatia and

the Debtors' stipulation and entered an order setting the briefing schedule on Dalmatia's

objection.[8] *See In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-

---

[7] After the entry of the bankruptcy court's February 5, 2019 order, counsel for the Debtors moved to withdraw. *See* Mot. of Counsel to Reorganized Debtors Earth Pride Organics, LLC, and Lancaster Fine Foods, Inc. (a) for Leave to Withdraw and (b) Request for an Expedited Hr'g with Reduced Notice Period, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 647. Due to this motion and "the uncertainty regarding Debtor's representation," the bankruptcy court suspended the briefing schedule. *See* Order at 1, n.1, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 658. After a hearing on March 20, 2019, the bankruptcy court granted the motion to withdraw. *See In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. Nos. 663, 665.
[8] Per the order, the parties have until May 31, 2019, to file supporting memoranda, and until June 14, 2019, to file reply memoranda. *See* Order at 1, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 676.

elf (Bankr. E.D. Pa.), Doc. Nos. 675, 676. The following day (and pursuant to the parties'
stipulation), the bankruptcy court entered an order appointing the Honorable Ashely Chan to
mediate the dispute between Dalmatia and the Debtors. *See* Order Appointing Mediator, *In re:
Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.),
Doc. No. 677. Judge Chan submitted a mediator's report on May 16, 2019, indicating that the
mediation was unsuccessful. *See* Mediator's Rep., *In re: Earth Pride Organics, LLC and Lancaster
Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 680.

## II.    DISCUSSION

Federal district courts have "original but not exclusive jurisdiction of all civil proceedings
arising under title 11, or arising in or related to cases under title 11." *See* 28 U.S.C. § 1334(b). A
"district court may provide that any or all cases under title 11 and any or all proceedings arising
under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy
judges for the district." 28 U.S.C. § 157(a). While a district court may refer bankruptcy cases to
bankruptcy judges, the district court must withdraw the reference if resolution requires
consideration of law outside of the Bankruptcy Code. *See* 28 U.S.C. § 157(d) ("The district court
shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution
of the proceeding requires consideration of both title 11 and other laws of the United States
regulating organizations or activities affecting interstate commerce."). In addition, "the district
court may withdraw, in whole or in part, any case or proceeding referred under this section, on its
own motion or on timely motion of any party, for cause shown." *Id.*

As indicated by this language in section 157(d), there are two mechanisms – one permissive
and one mandatory – by which the district court can withdraw all or part of a proceeding before
the bankruptcy court and return it to the district court. In this case, Dalmatia is arguing only for

permissive withdrawal of the reference. *See* Mem. of Law in Supp. of Mot. of Dalmatia Import Group, Inc. for Withdrawal of the Reference Pursuant to 28 U.S.C. § 157(d) and Local Rule 5011-1 ("Dalmatia Mem.") at 5 ("Dalmatia has Shown Sufficient Cause for Permissive Withdrawal[.]" (emphasis omitted)).

"The party seeking the withdrawal of the reference has the burden of going forward to show the grounds for withdrawal and bears the ultimate risk of non-persuasion." *In re Camden Ordnance Mfg. Co. of Ark., Inc.*, 245 B.R. 794, 805 (Bankr. E.D. Pa. 2000) (citations omitted). For permissive withdrawal, section 157(d) "requires in clear terms that cause be shown before the reference can be withdrawn." *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990). Although section 157(d) does not define cause, this court must at least consider "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *Id.* The timing of the withdrawal of the reference is also relevant. *See id.* (discussing timing consideration). In addition, "[a] court's exercise of discretion to withdraw is guided by whether (i) the underlying proceeding involves 'core' or 'non-core' claims, and (ii) any party has asserted a right to a jury trial to which it is constitutionally entitled." *In re Portnoy*, Misc. A. No. 17-38, 2017 WL 3141186, at *2 (E.D. Pa. July 24, 2017) (citations omitted).

In support of its motion, Dalmatia focuses on the factors identified by the Third Circuit in *In re Pruitt* and argues that it can show sufficient cause for permissible withdrawal. *See* Dalmatia Mem. at 5–8. Dalmatia first contends that withdrawing the reference would promote uniformity in bankruptcy administration because this court (and not the bankruptcy court) "is intimately familiar with the facts, issues and parties relative to the Objection." *Id.* at 6. Dalmatia notes that the undersigned presided over the Fig Spread Action for two years, including presiding over the jury

Case 2:19-mc-00186-ECS    Document 9    Filed 09/29/19    Page 19 of 23

trial which resulted in a verdict largely in Dalmatia's favor. *See id.* In addition, Dalmatia claims that the undersigned's mediation efforts were significant in the parties settling the matter, and the undersigned specifically retained jurisdiction to resolve disputes arising under the Settlement Agreement. *See id.*

Concerning forum shopping and confusion, Dalmatia asserts that forum shopping is not an issue here because this court expressly retained jurisdiction to resolve disputes related to settlement. *See id.* As for the most economical use of the parties' resources, Dalmatia believes that it would not be economical to proceed before the bankruptcy court because the parties would have to bring the bankruptcy court "up to speed regarding the Settlement Agreement and disputes thereunder" whereas "the District Court is already familiar with the parties, the facts, and the Settlement Agreement." *Id.* at 6–7.

Regarding expediting the bankruptcy process, Dalmatia contends that the only open issue with the 4th amended plan is its objection and, if the bankruptcy court resolves the objection, the parties can appeal to the district court. *See id.* at 7. As such, allowing the district court to resolve the issue will bypass the possibility of an appeal and expedite the process. *See id.* As for the final factor, the timing of the request for withdrawal, Dalmatia contends that its request is timely because it filed the motion shortly after the Debtors changed the chapter 11 plan to treat it differently than the other unsecured creditors. *See id.* at 7–8.

In their opposition to the motion to withdraw reference, the Debtors argue that Dalmatia ignores any discussion as to whether the resolution of its objection is a "core" or "non-core" proceeding. *See* Mem. of Law of the Debtors in Opp. to the Mot. of Dalmatia Import Group, Inc. for Withdrawal of the Reference Pursuant to 28 U.S.C. § 157(d) at 7, Doc. No. 4. The Debtors point out that the objection is a core proceeding because it "neither affects nor revolves around the

18

Settlement Agreement reached before [the undersigned] in 2017. On the contrary, the Objection

at issue here solely involves issues of unfair discrimination under 11 U.S.C. § 1129(b)(1)." *Id.* at

8. In addition, it is essentially a proceeding involving the confirmation of a plan, which is expressly

identified as a "core" proceeding under section 157(b)(2) of the Bankruptcy Code. *See id.* at 9–10.

As it is a core proceeding, this weighs against the district court withdrawing the reference. *See id.*

at 8–9 (citations omitted).

  Regarding the *In re Pruitt* factors, the Debtors argue that allowing the bankruptcy court to

decide the objection "promotes uniform administration because all prior proceedings in that Court

have involved the same goals – the effective reorganization of the estate." *Id.* at 11. The Debtors

also point out that the bankruptcy court possesses knowledge of the facts involved in the matter

and the bankruptcy court will promptly resolve the issue; therefore, filing the motion for

withdrawal of the reference is the "most inefficient method of addressing this problem." *Id.* In

addition, the Debtors claim that Dalmatia "fail[s] to grasp that this is not a dispute concerning the

interpretation of a settlement agreement, but a dispute involving the classification of creditor's

claim pursuant to a bankruptcy plan of reorganization." *Id.* They note that Dalmatia negotiated the

settlement agreement in the Fig Spread Action in its own self-interest (and not in the interest of

other unsecured creditors) and received benefits as part of that agreement that other unsecured

creditors did not receive. *See id.* They also argue that there is no "benefit" to being before the

district court instead of the bankruptcy court. *See id.* at 12.

  After reviewing the parties' submissions and the bankruptcy court record, it is unfortunate

that Dalmatia did not address, in either its initial submission or in a reply brief, whether this matter

involves a "core" or "non-core" proceeding. Nonetheless, it appears that the resolution of

Dalmatia's objection is a "core" proceeding under the Bankruptcy Code as it is part of the process

of confirming a plan.[9] *See* 28 U.S.C. § 157(b)(2)(L) ("Core proceedings include, but are not limited to-- . . . **(L)** confirmations of plans[.]"); *In re Woodruff*, Case No. 17bk18780, 2019 WL 1929964, at *3 (Bankr. N.D. Ill. Apr. 30, 2019) ("An objection to a bankruptcy plan may only arise in a case under the Bankruptcy Code and is part of the process of confirming a plan, which is specified as a core proceeding. Similarly, an objection to a claim may only arise in a case under the Bankruptcy Code, arises under section 502 of the Bankruptcy Code and is specified as a core proceeding." (internal citations omitted)); *In re MBM Entm't, LLC*, 531 B.R. 363, 378 (Bankr. S.D.N.Y. 2015) ("Davis's proofs of claim (which incorporate all of her claims against the Debtors in the adversary proceedings), Davis's objections to confirmation of the Debtors' proposed plans of reorganization, and her motion to dismiss the Chapter 11 cases on grounds of 'bad faith,' are plainly within this Court's 'core' jurisdiction."). Moreover, even if the objection did not technically fall under section 157(b)(2)(L), it is still a "core" proceeding because "it invokes a substantive right provided by title 11 or . . . is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 196 (3d Cir. 1999) (internal quotation marks and citations omitted). Therefore, this weighs against this court withdrawing the reference to the bankruptcy court.

The *in re Pruitt* factors also do no warrant withdrawing the reference in this case. In the first instance, from a timing perspective, the court disagrees with Dalmatia that it acted promptly in seeking to withdraw the reference.[10] Dalmatia had notice by no later than June 6, 2018, that the

---

[9] The court recognizes that the bankruptcy court technically approved the 4th amended plan on September 17, 2018, but in doing so specifically permitted Dalmatia, the Debtors, and the Committee to "retain the right to press their respective arguments for and against the Dalmatia Objection and its attempt to be treated as a Class 8 and/or 9 Claim." *See* Order Confirming Fourth Am. Jt. Plan of Reorganization Dated June 6, 2018 at 6, *In re: Earth Pride Organics, LLC and Lancaster Fine Foods, Inc.*, No. 17-13816-elf (Bankr. E.D. Pa.), Doc. No. 502.

[10] In *In re Pruitt*, the Third Circuit appears to have discussed the timing issue in relation to when the district court withdraws the reference. *See* 910 F.2d at 1168 (discussing timing of district court's withdrawal of reference). Nonetheless, numerous courts have interpreted *In re Pruitt* as requiring courts to consider the timing of the request for withdrawal. *See, e.g.*, *In re: Rite Way Elec., Inc.*, Misc. Matter Nos. 14-232, 14-231, 2017 WL 660856, at *5 (E.D.

Case 2:18-mc-00186-ECS Document 9    Filed 05/23/19    Page 21 of 23

Debtors were proposing to treat it differently than the other unsecured creditors seemingly based at least in part on the terms of the Settlement Agreement. It filed an objection to confirmation of the 4th amended plan on July 16, 2018, seemingly after receiving notice that the votes were in favor of approving the plan. While Dalmatia indicates that it unsuccessfully attempted to resolve the dispute through its good faith efforts to communicate with the Debtors, the bankruptcy court confirmed the plan (exempting Dalmatia's objection) on September 17, 2018. The bankruptcy court's order confirming the plan directed that Dalmatia file a praecipe to set a hearing date on its objection. Dalmatia filed its praecipe to set the hearing date on October 12, 2018, and the bankruptcy court entered an E-order on October 16, 2018 scheduling a hearing for November 14, 2018. Almost two weeks after entry of the order, Dalmatia filed the instant motion seeking withdrawal of the reference.

At bottom, it surely does not appear from the record that "this [was] the first opportunity Dalmatia has had to seek withdrawal." Dalmatia Mem. at 8. Instead, Dalmatia filed its objection with the bankruptcy court in July and did not file the instant motion until the end of October, when the bankruptcy court had a hearing scheduled for approximately two weeks later. As such, this factor weighs against withdrawal.

Secondly, there is no indication that withdrawing the reference will somehow expedite the bankruptcy process. While the court recognizes the possibility that the losing party before the bankruptcy court may seek to appeal from the adverse ruling, there are multiple potential possibilities as to what could occur even if this court withdraws the reference and a party is dissatisfied with this court's ruling. In other words, it is unclear that withdrawal will expedite the bankruptcy process.

---

Pa. Feb. 17, 2017) (indicating that *In re Pruitt* requires courts to consider, *inter alia*, "the timing of the request for withdrawal"). As such, the court follows other district courts in considering the timing of the request.

As for the final factors, while the court admittedly retained jurisdiction to resolve disputes, this court is in no better position to determine whether the Debtors are unfairly discriminating against Dalmatia under the 4th amended plan than the bankruptcy court. In this regard, to the extent that part of the dispute centers on the terms of the settlement agreement, both this court and the bankruptcy court would seemingly have to follow principles of contract law to address the issue. Both courts would "have to get up to speed" by evaluating the parties' arguments and the applicable law, so it would not be any more economical to have this matter heard here.[11] And, the bankruptcy court would surely be in a better position to use its expertise to evaluate whether the Debtors are unfairly discriminating against Dalmatia in violation of 11 U.S.C. § 1129(b)(1).

As a final note, the court recognizes that the settlement agreement in the Fig Spread Action provides for this court's retention of jurisdiction over disputes arising from the agreement. Nonetheless, any issue over the interpretation of the agreement is only part of the overall issue as to whether the Debtors are unfairly discriminating against Dalmatia. This ultimate issue is best left to the expertise of the bankruptcy court.

### III.    CONCLUSION

The court does not find that Dalmatia has shown sufficient cause to withdraw the reference to the bankruptcy court in this action. Dalmatia's objection to confirmation of the 4th amended plan is a "core" proceeding under the Bankruptcy Code because it either invokes a substantive right provided by title 11 or is a proceeding that could arise only in the context of a bankruptcy case. The objection, while partially involving interpretation of language in the settlement agreement, primarily concerns whether the Debtors are unfairly discriminating against Dalmatia.

---

[11] Although Dalmatia is correct that the undersigned was involved in the Fig Spread Action (which started with the complaint in Civil Action No. 16-182) for approximately two years, at this stage, the bankruptcy court has been involved in the Debtors' bankruptcy proceeding for approximately two years.

This is an issue that the bankruptcy court is in a better position to address in the first instance.

Additionally, the *In re Pruitt* factors do not support cause for withdrawal of the reference.

Accordingly, the motion to withdraw reference is denied.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.